# IN THE COURT OF APPEALS OF IOWA

No. 17-1979
Filed February 6, 2019

**33 CARPENTERS CONSTRUCTION, INC.,**
        Plaintiff-Appellant/Cross-Appellee,

**vs.**

**THE CINCINNATI INSURANCE COMPANY,**
        Defendant-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Henry W. Latham II,

Judge.


        Assignee of a casualty insurance policy appeals a summary judgment ruling

finding it was acting as an unlicensed public adjuster. **AFFIRMED.**



        Kyle J. McGinn of McGinn, Springer & Noethe PLC, Council Bluffs, for

appellant.

        Catherine M. Lucas and Sean M. O'Brien of Bradshaw, Fowler, Proctor &

Fairgrave, P.C., Des Moines, for appellee.


        Heard by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

The Cincinnati Insurance Company (Cincinnati) insured a home that was damaged by a storm. The homeowner granted a post-loss assignment of his insurance claim to 33 Carpenters Construction, Inc. (33 Carpenters). 33 Carpenters sued Cincinnati claiming breach of the insurance contract and demanded use of the expedited civil action (ECA) procedures. Cincinnati counterclaimed for a declaratory judgment that 33 Carpenters was an unlicensed public adjuster and sought removal from the ECA procedures. The district court granted summary judgment in favor of Cincinnati on the public-adjuster claim but denied removal from the ECA procedures. 33 Carpenters appeals and Cincinnati cross-appeals.

## I.      Background Facts and Proceedings

In March 2016, a hail and wind storm damaged the home of Gregg Whigham. Cincinnati insures Whigham's house. At some unknown point in time, Whigham and 33 Carpenters, a home-repair contractor, entered into an agreement for the repair of Whigham's house. In exchange for repairing the house, 33 Carpenters would receive any proceeds paid by Cincinnati on Whigham's home-insurance policy. No copy of this agreement appears in the record. On October 6, Whigham and Tony McClanahan, a representative of 33 Carpenters, phoned Cincinnati to report the storm damage. McClanahan advised Cincinnati that 33 Carpenters was Whigham's contractor and would attend the insurance inspection.

On October 10, Whigham and McClanahan signed an "Assignment of Claim and Benefits" form in which Whigham agreed to sell and transfer his claim and any cause of action he might have against Cincinnati for the storm damage. The form

indicates the type of claim is storm damage and the date of the loss was October 10, 2016. The form allows 33 Carpenters, "in its own name and for its own benefit [to] prosecute, collect, settle, compromise and grant releases on said claim as it, in its sole discretion, deems advisable."

Cincinnati assigned an adjuster who reviewed the claim and prepared an estimate of the repair costs, and Cincinnati made payment according to that estimate. In February 2017, 33 Carpenters emailed Cincinnati to request an estimate for further repairs on the house, including siding and gutters. Cincinnati responded that it would address any further issues only with Whigham and scheduled a construction consultant to re-inspect Whigham's house. 33 Carpenters was in contact with Whigham about the need for further repairs and attempted numerous times to communicate directly with Cincinnati, including sending pictures. However, Cincinnati only addressed its communications to Whigham. 33 Carpenters communicated with Whigham that it needed to determine "how Cincinnati intends to make you whole," and it made suggestions on what it determined were necessary repairs. In its last email exchange, 33 Carpenters sent Cincinnati comparison photos in response to Cincinnati's stated intent to have a construction consultant do the same task.

A few days later, 33 Carpenters filed suit against Cincinnati for breach of contract, alleging Cincinnati failed to pay 33 Carpenters all benefits due and owing under the Whigham insurance policy. Further, it contended it was entitled to recover from Cincinnati because of its post-loss assignment of Whigham's claim under his insurance policy. 33 Carpenters also filed an election to bring the suit as an ECA under Iowa Rule of Civil Procedure 1.281.

Cincinnati denied the claims and filed affirmative defenses, including that in obtaining the assignment from Whigham, 33 Carpenters acted as a public adjuster without a license, in violation of Iowa Code chapter 522C (2017), which rendered the assignment unenforceable. It also claimed 33 Carpenters did not possess an insurable interest in the insured premises. Cincinnati brought a counterclaim for declaratory relief, asking the court to determine and declare the legal effect of the assignment. 33 Carpenters resisted the counterclaim, and the court scheduled a jury trial.

Cincinnati filed an application to terminate the ECA procedures, pursuant to Iowa Rule of Civil Procedure 1.281(1)(g), arguing the rule allows claims to proceed as an ECA only if the sole relief is a money judgment. It contended that due to its compulsory counterclaim requesting declaratory relief, the action could not proceed under rule 1.281. 33 Carpenters resisted, arguing the language of the rule itself allows Cincinnati's claim to proceed as an ECA. After a telephonic hearing, the court denied Cincinnati's request to terminate the ECA procedures, finding that the relief sought by Cincinnati in its declaratory judgment action is an issue in 33 Carpenters's case and, thus, can be decided by summary judgment or by a trier of fact.

Cincinnati then filed a motion for summary judgment, claiming 33 Carpenters violated Iowa Code sections 507A.3, 507A.5, and 522C.4 by acting as an unauthorized public adjuster and its actions of obtaining and enforcing the assignment of Whigham's insurance claims were without authority, which rendered the assignment between 33 Carpenters and Whigham invalid. 33 Carpenters resisted, contending only the Iowa Insurance Commissioner can enforce the

provisions of Iowa Code chapter 522C so Cincinnati could not use it as a defense to invalidate its assignment with Whigham. Alternatively, 33 Carpenters argued it obtained a valid post-loss assignment from Whigham, any conduct on its part before the October 2016 assignment did not violate chapters 507A or 522C, and any action it undertook after the date of the assignment was on behalf of its own claim, not on Whigham's behalf. After a telephonic hearing, the district court granted Cincinnati's motion for summary judgment both on 33 Carpenters's direct claim and on Cincinnati's counterclaim based on a violation of chapter 522C.[1] 33 Carpenters appeals. Cincinnati cross-appeals the court's denial to remove the case from the ECA procedures.

## II.    Standard of Review

We review an order granting summary judgment for correction of errors at law. *Johnson v. Associated Milk Producers, Inc.*, 886 N.W.2d 384, 389 (Iowa 2016). "On review, 'we examine the record before the district court to determine whether any material fact is in dispute, and if not, whether the district court correctly applied the law.'" *Roll v. Newhall*, 888 N.W.2d 422, 425 (Iowa 2016) (quoting *J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.*, 589 N.W.2d 256, 258 (Iowa 1999)).

> [W]e examine the record in the light most favorable to the nonmoving party. We afford the nonmoving party "every legitimate inference that can be reasonably deduced from the evidence, and if reasonable minds can differ on how the issue should be resolved, a fact question is generated," and the district court should deny summary judgment.

*Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013) (citations omitted). Summary judgment is properly granted "when the moving party

---

[1] The hearing on the motion for summary judgment was unreported; therefore, our record is limited to the parties' pleadings and the court's order granting summary judgment.

demonstrates there is no genuine issue of material fact and that [it] . . . is entitled to judgment as a matter of law." *Id.*; *accord* Iowa R. Civ. P. 1.981(3). "When a motion for summary judgment is made and supported . . . , an adverse party may not rest upon the mere allegations or denials in the pleadings." Iowa R. Civ. P. 1.981(5). The adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* "Speculation is not sufficient to generate a genuine issue of fact." *Nelson v. Lindaman*, 867 N.W.2d 1, 7 (Iowa 2015) (quoting *Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005)).

Cincinnati's counterclaim is for a declaratory judgment. Normally, our standard of review of a declaratory judgment action would depend on "whether the parties brought the case in equity or at law in the district court." *Boelman*, 826 N.W.2d at 500 n.1. "However, '[this] distinction is inconsequential on this appeal because the matter is before us on review of the district court's entry of summary judgment' . . . ." *Id.* (quoting *Ferguson v. Allied Mut. Ins. Co.*, 512 N.W.2d 296, 297 (Iowa 1994)). Therefore, "we base our review on the propriety of the district court's summary judgment ruling, not the declaratory judgment." *Id.*

## III.    Analysis

To recover under an insurance policy, "a person must possess an insurable interest in the insured property." *Conrad Bros. v. John Deere Ins. Co.*, 640 N.W.2d 231, 236 (Iowa 2001). "Generally, insurance policies . . . are not assignable prior to loss without the insurer's consent." *Id.* "However, general stipulations prohibiting assignments absent an insurer's consent have been held to apply only to pre-loss assignments." *Id.* at 237. Whigham's insurance policy with Cincinnati contains a term holding any assignment of the policy as invalid unless Cincinnati

gives its written consent. Yet, "once the loss has triggered the liability provisions of the insurance policy, an assignment is no longer regarded as a transfer of the actual policy. Instead, it is a transfer of a chose in action under the policy." *Id.* at 237–38 (citations omitted). The law favors the assignability of choses in action and the "assignee . . . has a right of action on [the assignment] in the assignee's own name, subject to any defense or counterclaim which the maker or debtor had against an assignor of the instrument before notice of the assignment." Iowa Code § 539.1. If valid, as assignee, 33 Carpenters steps into Whigham's shoes and all of Whigham's rights to the insurance proceeds resulting from the March storm vest in 33 Carpenters. *See Conrad Bros.*, 640 N.W.2d at 238.

The district court ruled the assignment between Whigham and 33 Carpenters was invalid because it violated the licensure requirement for public adjusters under Iowa Code chapter 522C. It found 33 Carpenters's website included advertisements to advocate on an insured's behalf with their insurance adjuster and the company would work directly with the insurance company to ensure all damaged areas of the insured's house are included in their claim. The district court also found 33 Carpenters "attempted to aid Whigham in negotiations with Cincinnati to 'determine how Cincinnati is going to make [Whigham] whole.'" Further, the district court found 33 Carpenters demanded to be present when Cincinnati inspected Whigham's home and conducted its own investigation. Based upon these findings, the district court ruled 33 Carpenters acted as a public adjuster and did so without the required license. Consequently, it deemed the assignment between Whigham and 33 Carpenters invalid, entering summary

judgment against 33 Carpenters on its direct claim and for Cincinnati on its counterclaim.

33 Carpenters concedes that neither the company nor any of its representatives are or have been licensed public adjusters in Iowa. It contends that as of the date of the assignment between itself and Whigham—October 10, 2016—it was not acting on behalf of Whigham but on its own claim. It also argues the October 6 telephone call between its representative, Whigham, and Cincinnati is the only possible juncture where it could have possibly violated chapter 522C, but the only evidence presented to the district court by Cincinnati's representative provides no indication that during this conversation 33 Carpenters negotiated or otherwise advocated for Whigham. Further, 33 Carpenters argues that Cincinnati's reference to 33 Carpenters's website as further evidence of a violation of 522C failed to provide any assertion as to how the website specifically impacted the present case.

Pursuant to Iowa Code section 505.8(1), the Iowa Commissioner of Insurance has the "general control, supervision, and direction over all insurance business transacted in the state, and shall enforce all the laws of the state relating to federal and state insurance business transacted in the state," which includes chapter 522C. *See* Iowa Code § 522C.2(2). Iowa Code chapter 522C "govern[s] the qualifications and procedures for licensing public adjusters," including the "duties of and restrictions on public adjusters." *Id.* § 522C.1. A public adjuster is anyone, who for compensation or value, "acts on behalf of an insured" by:

> (a) Acting for or aiding an insured in negotiating for or effecting the settlement of a first-party claim for loss or damage to real or personal property of the insured.

(b) Advertising for employment as a public adjuster of first-party insurance claims or otherwise soliciting business or representing to the public that the person is a public adjuster of first-party insurance claims for loss or damage to real or personal property of an insured.

(c) Directly or indirectly soliciting business investigating or adjusting losses, or advising an insured about first-party claims for loss or damage to real or personal property of the insured.

*Id.* § 522C.2(7)(a)–(c); Iowa Admin. Code r. 191-55.2. "A person *shall not operate as* or represent that the person is a public adjuster in this state unless the person is licensed by the commissioner in accordance with this chapter." Iowa Code § 522C.4 (emphasis added).

Chapter 522C provides penalties the commissioner may administer for violations of the requirements and rules of the chapter. *See id.* §§ 505.8(1), 522C.2(2), 522C.3, 522C.6. The commissioner is authorized to suspend or revoke a public adjuster's license or levy a civil penalty if there is a violation in addition to ordering a person to cease and desist or other affirmative actions as necessary. *Id.* § 522C.6(1)(3)(a)–(c). If the commissioner's orders are not complied with, then "the commissioner may petition a court of competent jurisdiction to enforce the order," and "the court may adjudge the person to be in civil contempt" and impose civil penalties. *Id.* § 522C.6(3)(d); *see also id.* § 505.8(13).

The general rule appears to be that a contract made in the course of a business or occupation for which a license is required by one who has not complied with such requirement is unenforceable where the statute expressly so provides, or where it expressly or impliedly, as a police regulation, prohibits the conduct of such business without compliance.

*Davis, Brody, Wisniewski v. Barrett*, 115 N.W.2d 839, 841 (Iowa 1962). Iowa Code section 522C.4 expressly prohibits a person from operating as a public adjuster in Iowa unless they are licensed in Iowa. Thus, if 33 Carpenters was operating as

an unlicensed public adjuster when it entered into a contract with Whigham, such contract would be unenforceable.

33 Carpenters admits it was not licensed as a public adjuster in Iowa at all times material to this lawsuit. However, 33 Carpenters challenges the jurisdiction of the courts to make the initial determination as to whether it was operating as a public adjuster in this case, arguing the legislature only authorized the insurance commissioner to make that determination. We certainly agree the legislature gave the commissioner the authority and mandate to adopt rules to administer and enforce the licensing of public adjusters. *See* Iowa Code § 522C.3. The legislature also gave the commissioner the sole authority to issue licenses and to discipline and regulate conduct and activities of public adjusters, including authority to petition the court for enforcement purposes. *Id.*; *see also id.* §§ 522C.4, 522C.6.

Neither party requested the commissioner exercise authority in this dispute, and there is no evidence the commissioner has been made aware of or given an opportunity to consider the public-adjuster issue in this case. Instead, 33 Carpenters initiated this lawsuit in an Iowa district court and sought relief there. Cincinnati has challenged whether 33 Carpenters has legal authority to proceed in its lawsuit under the assignment granted to it by Whigham, a challenge that put the public-adjuster question squarely before the district court, and now us. Although chapter 522C grants certain authority and responsibility to the insurance commissioner, the statutes do not limit our authority to apply the law to the facts before us in order to resolve the legal dispute presented to us as a result of the lawsuit filed by 33 Carpenters.

We turn now to the question of whether 33 Carpenters was "acting for or aiding [Whigham] in negotiating for or effecting the settlement [with Cincinnati] of a first-party claim for loss or damage to real or personal property of [Whigham]." *See id.* § 522C.2(7)(a). 33 Carpenters argues it acted on its own behalf pursuant to the assignment of rights by Whigham to 33 Carpenters. This is a form-over-substance argument. To be sure, the assignment was intended by 33 Carpenters to benefit it by allowing it to make a profit; but the assignment was fundamentally and primarily a vehicle by which Whigham intended to benefit when 33 Carpenters successfully negotiated and effected a settlement with Cincinnati so 33 Carpenters could repair his home. We find there is no genuine issue of fact that 33 Carpenters was acting for and aiding Whigham in negotiating for and attempting to effect a settlement of Whigham's first-party insurance claim for loss to his home insured by Cincinnati. Thus, 33 Carpenters operated as a public adjuster on behalf of Whigham while not licensed by the insurance commissioner. Such acts were in violation of Iowa Code section 522C.4 and prohibited. Accordingly, under the facts of this case, the post-loss assignment is not enforceable. There is no genuine issue of material fact, and Cincinnati is entitled to judgment as a matter of law.[2] We affirm the district court.[3]

**AFFIRMED.**

---

[2] Cincinnati filed notice of additional authority and referred during oral arguments to the application of Iowa Code section 103A.71. Because we affirm the summary judgment on the same grounds raised in and relied upon by the district court, we do not consider or address the additional authority.

[3] Given this disposition, we need not address the ECA issues raised in this appeal.